UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

MAY 1 3 2024

RECEIVED

No. 23-7158

# UNITED STATES COURT OF APPEALS FOR THE D.C. CIRCUIT

---

**ALEXANDER GALLO**
*Plaintiff-Appellant*

v.

**DISTRICT OF COLUMBIA**
*Defendant - Appellee*

---

## REPLY OF PLAINTIFF-APPELLANT
## ALEXANDER GALLO

---

On Appeal from the U.S. District Court for the District of Columbia

No. 21-CV-003298

(Trevor N. McFadden, District Judge)

Alexander Gallo
950 25th St NW #329N
Washington, DC 20037
516-770-1624
aogallo@gwmail.gwu.edu

1

## TABLE OF CONTENTS

I.   There Was No "Ejectment" Loophole.................................................7

II.  It Would be a Taking Even With an "Ejectment" Loophole.............................8

III. Contracts Clause .................................................................9

IV.  There was No Compensation Made Available...........................................15

V.   Physical Taking/Appropriation.....................................................15

VI.  Regulatory Taking ................................................................19

VII. "Deferring a Remedy" & "Regulation".................................................21

VIII. Misrepresenting *Block* ...........................................................23

IX.  Burying the New York Precedents ..................................................24

X.   The District Accidentally Confesses the Taking as to My Other Defaulted Lessees (Present Estates) and Expectant Estates ....................................26

XI.  Some Final Frauds..................................................................27

CERTIFICATE OF COMPLIANCE.................................................................30

CERTIFICATE OF SERVICE ..................................................................31

## ADDENDUM CONTAINING:

1. 28(k) Letter of Appellee (September 27, 2021)
2. Order of Superior Court, Gallo v. Hopkins (December 16, 2020)

## STATUTES & REGULATIONS:

Applicable statutes, Mayors Orders, etc., are contained in the Brief for District of Columbia. The "Filing Ban" was an ever-shifting collection of emergency and temporary amendments described in the Superior Court Order in 2020. Federal statutes such as the CARES act are not relevant to this case.

## Cases

*78th Street Broadway Co. v. Rosenbaum*, 182 N.Y.S. 505 (1920)..........................19

*900 G Street Associates v. DHCD*, 430 A.2d 1387 (D.C. 1981) .............................14

*Action Assn. v. Santa Monica Rent Control Bd.*, 94 Cal.App.4th 587 (Cal. Ct. App. 2001) ......................................................................................................................16

*Adams v. Spillyards*, 61 S.W.2d 686 (Ark. 1933).....................................................9

*Agar v. Winslow*, 123 Cal. 587 (1899).....................................................................13

*Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234 (1978) .................................7

*Birkenfeld v. City of Berkeley*, 17 Cal.3d 129 (Cal. 1976) .....................................13

*Borough of Fort Lee v. Banque National de Paris*, 311 N.J. Super. 280, 710 A.2d 1 (1998)......................................................................................................................13

*Brandt Co., Inc., v. Weil*, 185 N.Y.S. 497 (1920).....................................................19

*Brummagim v. Spencer*, 29 Cal. 661 (Cal. 1866) ....................................................11

*Burt v. Williams*, 24 Ark. 91 (1863) ..........................................................................9

*Chastleton Corp. v. Sinclair*, 264 U.S. 543 (1924).....................................................7

*Chicago Iowa R.R. Co. v. Hopkins*, 90 Ill. 316, 321 (1878)....................................15

*Cienega Gardens v. U.S.*, 331 F.3d 1319 (Fed. Cir. 2003)......................................17

*City Bar, Inc. v. Edwards*, 349 So. 3d 22 (La. Ct. App. 2022)................................23

*City of Lynchburg v. Mitchell*, 114 Va. 229 (1912)..................................................15

*Clark v Nash*, 198 U.S. 361 (1905)............................................................................7

*Conrad v. Medina*, 47 A.2d 562 (D.C. 1946) ..........................................................22

*Dist. of Columbia v. Design Ctr. Owner (D.C.)*, 286 A.3d 1010 (D.C. 2022)........21

*Dua v. Comcast Cable of Maryland, Inc.*, 370 Md. 604 (Md. 2002) ......................16

*Farley v. Graney*, 146 W. Va. 22 (W. Va. 1960) ......................................................7

*Federal Land Bank of Wichita v. Story*, 1988 OK 52 (Okla. 1988) .........................9

*Federal Land Bank v. Bott*, 732 P.2d 710 (Kan. 1987) .............................................9

*First Trust Co. v. Smith*, 134 Neb. 84 (1938) ............................................................9

*Guttag v. Shatzkin*, 194 A.D. 509 (N.Y. App. Div. 1920)......................................19

*Guttag v. Shatzkin*, 230 N.Y. 647 (N.Y. 1921).........................................................20

*Hamilton Bank v. Williamson Cty. Reg. Planning*, 729 F.2d 402 (6th Cir. 1984) ..15

*Hanauer v. Republic Building Co.*, 216 Wis. 49 (1934)...............................................9

*Harrisonville v. W.S. Dickey Clay Mfg. Co.*, 289 U.S. 334 (1933) ........................14

*Hegeman Farms Corp. v. Baldwin*, 293 U.S. 163 (1934) ........................................15

*Heights Apartments, LLC v. Walz*, 30 F.4th 720 (8th Cir. 2022) ................... 4, 6, 10

*Hinsdale v. White*, 6 Hill & Den. 507 (N.Y. 1844) ..................................................13

*In re Amendment of Eighth Order Extending Declaration of Judicial Emergency in Response to COVID-19 Emergency*, 299 Va. 99 (Va. 2020) ..............................23

*In re Windmill Farms, Inc.*, 841 F.2d 1467 (9th Cir. 1988) ....................................11

*Iten v. Cnty. of L. A.*, 81 F.4th 979, 992 (9th Cir. 2023)............................................6

*Jackson ex dem. Livingston v. Bryan*, 1 Johns. 322 (1806) ....................................13

*Jones v. Crittenden*, 4 N.C. 385 (N.C. 1814).............................................................9

*Jones v. McMahan*, 30 Tex. 719 (1868) .....................................................................9

*Korematsu v. United States*, 323 U.S. 214 (1944)......................................................8

*Legal Soc'y Chapter of the Univ. of Cal. V. Martinez*, 561 U.S. 661 (2010)...........3

*Levy Leasing Co., Inc. v. Siegel*, 194 A.D. 482 (N.Y. App. Div. 1920).................19

*Lindsey v. Normet*, 405 U.S. 56 (1972) .....................................................................3

*Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555 (1935).......................15

*Luter v. Hunter,* 30 Tex. 689 (1868).........................................................................9

*Matter of People*, 264 N.Y. 69, 96 (N.Y. 1934) ........................................................9

*Melendez v. City of New York*, 16 F.4th 992 (2d Cir. 2021).....................................7

*Mitchell v. Harmony*, 54 U.S. 115 (1851) .................................................................7

*Muskin, Trustee v. State Dept. of Assess. Tax.*, 422 Md. 544 (Md. 2011) ..............16

*National Capital Housing Authority v. Douglas*, 333 A.2d 55 (1975)....................22

*Niagara Falls Bridge Commission v. United States*, 76 F. Supp. 1018 (Fed. Cl. 1948) (1948)................................................................................................5

*Palazzolo v. Rhode Island*, 533 U.S. 606 (2001) ...................................................14

*Penna. R.R. Co. v. Public Ser. Com*, 126 Md. 59 (Md. 1915)...................................1

*People ex rel. Durham Realty Corp. v. La Fetra*, 230 N.Y. 429, 443 (N.Y. 1921) 20

*People ex Rel. Rayland Realty Co., Inc. v. Fagan*, 194 A.D. 185 (N.Y. App. Div. 1920) .................................................................................................19

*Pomponio v. Claridge of Pompano Condominium*, 378 So. 2d 774 (1979)..............6

*Porter v. Shibe*, 158 F.2d 68 (10th Cir. 1946) .........................................................10

*Queen Emma Foundation v. Tingco*, 74 Haw. 294 (Haw. 1992) ..............................3

*Reich v. Cochran*, 201 N.Y. 450 (N.Y. 1911) ..........................................................3

*Rivera v. R. Cobian Chinea Co.*, 181 F.2d 974 (1st Cir. 1950)...............................23

*State ex Rel. Cleveringa v. Klein*, 63 N.D. 514 (N.D. 1933) ....................................9

*State ex Rel. v. Waterfield*, 167 Okla. 209 (Okla. 1934)..........................................9

*State v. Carew*, 13 Richardson L. & E. Rep., 498 (S.C. 1866)................................9

*State v. Goldberg*, 437 Md. 191 (Md. 2014)............................................................16

*Stern v. Equitable Trust Co.*, 238 N.Y. 267 (N.Y. 1924) .......................................20

*Stop the Beach Renourishment, Inc. v. Florida Dept. of Environmental Protection*, 560 U.S. 702 (2010).........................................................................................3

*Sturges v. Crowninshield*, 17 U.S. 122 (1819) .........................................................8

*Sveen v. Melin*, 584 U.S. __ (2018) ........................................................................7

*Taylor v. Stearns*, 59 Va. 244 (1868).......................................................................9

*Taylor v. Stearns*, 59 Va. 244 (Va. 1868) ..............................................................24

*Travelers Insurance v. Marshall*, 124 Tex. 45 (1934)..........................................7, 9

*Ullmann Realty Co. v. Tamur*, 113 Misc. 538,185 N.Y.S. 612 (1920) ...................19

*Webster v. Rose*, 53 Tenn. 93 (1871).......................................................................8

*Welsh v. Cross*, 146 Cal. 621 (Cal. 1905)................................................................8

## REPLY

*"To know and not to know[1], to be conscious of complete truthfulness while telling carefully constructed lies,[2] to hold simultaneously two opinions which cancelled out[3], knowing them to be contradictory and believing in both of them, to use logic against logic, to repudiate morality while laying claim to it[4]...to forget whatever was necessary to forget, then to draw it back into memory again at the moment when it was needed, and then promptly forget it again[5]—that was the ultimate subtlety: consciously to induce unconsciousness, and then, once again, to become unconscious of the act of hypnosis you had just performed"[6] - 1984*

The District does not defend the opinion below on the merits. Instead, it asks this court to travel back in time and gaslight evictions of foreclosed homeowners and commercial lessees into existence in summer 2020. But the District already conceded reality before the DC Court of Appeals in *Gallo v. Hopkins* on September 27, 2021: "Mr. Gallo seeks to file a complaint for possession, and he will be able to do so in approximately three months." *28(k) Letter, Addendum 1.* In

---

[1] *Complaint*, at 1 ("No compensation was or is provided or promised by the District"), vice *First Opinion* ("the District provided programs to assist")

[2] *Complaint*, at 6 ("The Government… is legally trespassing"), vice *First Opinion* ("existing tenants")

[3] *First Opinion* ("This factor cuts in Gallo's favor"), vice *Second Opinion* ("fails on all three")

[4] *Penna. R.R. Co. v. Public Ser. Com*, 126 Md. 59 (Md. 1915) ("for that would amount to confiscation, and would ultimately defeat the very end they are designed to accomplish, namely, to subserve the public good."), vice *Second Opinion* (freeloading is "legitimate public purpose")

[5] *Second Opinion*, at 10 ("economic value of the property remains undiminished"), vice *Id*, at 11 ("Start with the economic effect…he has lost $36,400")

[6] *First Opinion* ("unable to evict the tenant"), vice *Order Granting Reconsideration* ("Gallo could not evict a squatter"), vice *Second Opinion* ("banned landlords from evicting their tenants")

juggling too many lies, the District accidentally concedes the physical taking as to

my other lessees in default.

## I.    There Was No "Ejectment" Loophole

*"The process has to be conscious, or it would not be carried out with sufficient precision, but it also has to be unconscious, or it would bring with it a feeling of falsity and hence of guilt."*


In my Opposition to Dismissal, I stated:

"Three months ago, in Document 46, the District "sincerely apologized" for making a false assertion in Document 42: "Plaintiff could have evicted Mr. Hopkins at any time." Now that's back on page 12 of the new Motion to Dismiss. Either the District can't keep track of its lies or it repeats them hoping I miss one anew…"


See also *Plaintiff's Sur-Reply to District's September 5th Reply*. The court below

acknowledged Hopkins and my other defaulted lessees "avoided eviction because

of the District's COVID-related eviction prohibition." *Opinion*, at 13. Yet the

District now gaslights, downgrading the *order* entered in *this* case (Gallo v.

Hopkins) precluding the "ejectment" of Hopkins to "dictum." See *Superior Court

Order*, 12/16/2020, *pages 26-30, Addendum 2.* The moratorium applied. It *was*

*applied by* the Superior Court.

Whether the occupancy was compelled by *The Legislature* or *The Superior

Court*, both are *The District*. Ergo, the District's repudiation of liability for the

Superior Court's order is fraud.[7] It pollutes the District's entire brief,[8] but the 28(k) letter removed this from debate. *Legal Soc'y Chapter v. Martinez*, 561 U.S. 661 (2010) ("any fact, bearing upon the issues involved, admitted by counsel, may be the ground of the court's procedure equally as if established by the clearest proof."); *McCormick on Evid. § 254* (6th ed. 2006) ("Judicial admissions are not evidence at all. Rather, they are formal concessions").

## II.    It Would be a Taking Even With an "Ejectment" Loophole

Let's say this court decides to go full gaslighting. *It's still a taking- and an impairment.* See *Reich v. Cochran*, 201 N.Y. 450 (N.Y. 1911) (Ejectment is "an expensive and dilatory proceeding which in many instances amounted to a denial of justice."); *Queen Emma Foundation v. Tingco*, 74 Haw. 294 (Haw. 1992) ("delay and expense incident to the common law remedy of ejectment"), *Lindsey v. Normet*, 405 U.S. 56 (1972) (ejectment is "relatively slow, fairly complex, and

---

[7] "If a legislature *or a court* declares that what was once an established right of private property no longer exists, it has taken that property, no less than if the State had physically appropriated it" *Stop the Beach Renourishment, Inc. v. Florida Dept. of Environmental Protection*, 560 U.S. 702 (2010)

[8] District Brief: "property owners could still seek to recover possession through actions in ejectment" at 5, "no evidence … sought to file an ejectment" at 8; "Gallo could have sought to remove him using an ejectment action at any time, but apparently chose not to." at 15; "Gallo could have filed a "traditional civil action in ejectment" against Hopkins" at 20; "The proper method to recover possession was an ejectment action under D.C. Code § 16-1104, which was unaffected by the filing moratorium." at 32; "the moratoria did not affect Gallo at all" at 36; "did not prevent him from ejecting Hopkins…the eviction moratorium had no application to him. Thus, it cannot constitute a taking of any variety."

substantially expensive procedure.") The constitution prohibits unexpectedly swapping in "delay" and "expense" in lieu of compensation.

### III. Contracts Clause

*"Everything faded into mist. The past was erased, the erasure was forgotten, the lie became truth."*

    a. Multiple Contracts Were Impaired

The District again attempts to neuter the complaint from a challenge to a statute to only a claim for damages for one Hopkins, by declaring: "there was no contract." Dist. Brief, at 18. This is a fraud. The SAC stated: *all my leases* were impaired. Not only Hopkins but "By Spring 2021, two tenants in Gallo's other properties had followed suit" *Opinion*, at 4. In my Opposition to dismissal, I elucidated a behavioral lease violation by another lessee of the sort held to be an impairment by the 8th Circuit in *Heights Apartments*.

The Contracts Clause claim here began in 2020: *Notice of Constitutional Questions*. Gallo v. Hopkins, 2020-LTB-008032 ("this pleading is a facial challenge...") ("no rights, and no remedies...without providing any compensation"). The SAC here states: "As of May 2020, all of Plaintiff's leases were thus made legally unenforceable" #14; "Plaintiff's lessees began breaching their leases (not paying) while Plaintiff had no remedy. Word had gotten out: why pay if there's nothing the landlord can do about it?" #32; "The defaults continued for six months while he had no remedy" #34,35. *Lessees...Defaults... **plural**.

9

Section III of the Complaint requested nominal damages and declaratory judgment for "impairment of Plaintiff's leases predating the Filing Ban."

As to Hopkins, I did allege succeeding to an *implied* contract pre-dating the moratorium. SAC, f.23. Those are protected from impairment, but by basing the Contracts Clause claim explicitly on *all my leases* predating the moratorium, the claim does not hinge on Hopkins. To hold there is no implied contract with him would create a circuit split with the Federal Circuit.[9]

### b. The Complaint is a Perfect Vehicle- and States a Claim

This pro se revealed the existence of a cause of action for impairment, simultaneous with *Carter*, "under the Constitution." The District tellingly ignores these precedents. This case provides this court the opportunity to hold that both sides of the circuit split could be right, with the solution to rebrand the heading of a complaint, if the proper holding is not simply to hold it actionable under USC1983 at least in some contexts like filing moratoria.

The District argues I fail to state a claim, but then immediately goes to the merits. This court should adopt the 9th Circuit's clarification: "Iten, at least for

---

[9] See *Niagara Falls Bridge Commission v. United States*, 76 F. Supp. 1018 (Fed. Cl. 1948) (1948) ("If anyone goes into occupancy of another's premises not under a claim of right, he does so with the implied obligation that he will pay a reasonable rental therefor…Such a contract is implied because no one has a right, of course, to occupy another's premises without paying for it"). See also Paul G. Kauper, *What is a "Contract" Under the Contracts Clause of the Federal Constitution?* 31 MICH. L. REV. 187 (1932).

purposes of filing a complaint, has alleged that the obligations of his contract had been "taken away or materially lessened." Lynch v. United States, 292 U.S. 571, 580, 54 S.Ct. 840, 78 L.Ed. 1434 (1934). That is sufficient to state a claim under the Contracts Clause." *Iten v. Cnty. of L. A.*, 81 F.4th 979, 992 (9th Cir. 2023).

c. The Merits

"The inviolability of contracts, public and private, is the foundation of all social progress, and the corner-stone of all the forms of civilized society, wherever an enlightened jurisprudence prevails. In our system of government it has been wisely placed under the constitution of the United States, and there it rests secure against all invasion." -*The Homestead Cases*, 63 Va. 266 (Va. 1872) (unanimous)

The core holding of *Blaisdell* was that full interim compensation in lieu of attempting satisfaction by foreclosure is what made the temporary change in remedy *reasonable*. This was unanimously reaffirmed in *Worthen*. The complaint stated: I was not offered *any* compensation by the District for *any* of the defaults by *any* of my lessees- and eviction was precluded for *all* of them.

The second ruse is the suggestion of a "modern Contracts Clause jurisprudence…" Pure propaganda. This court should join the Florida Supreme Court in rejecting it: "the 'new test' unveiled in Blaisdell was really no more than an attempt to restate what the Court had actually been doing all along" *Pomponio v. Claridge of Pompano Condominium*, 378 So. 2d 774 (1979) (f.14). The 8th and 2nd Circuits have recently held Covid statutes to be impairments. See *Heights Apartments, LLC v. Walz*, 30 F.4th 720 (8th Cir. 2022); *Melendez v. City of New*

11

*York*, 16 F.4th 992 (2d Cir. 2021) ("The Contracts Clause's Continued Vitality").
The inquiry has always been to look at all precedents and determine whether a law
"stacks up well against laws that this Court upheld against Contracts Clause
challenges as far back as the early 1800s" *Sveen v. Melin*, 584 U.S. __ (2018).[10]

*Emergency Does Not Create Power (nor "Latitude")*

About that single sentence… the Earth does not stretch itself at the
command of a legislature. Rather, public interest comes in like a tide and goes
back out. And when that predicate interest recedes a court is "compelled to say that
the law has ceased to operate" further. *Chastleton Corp. v. Sinclair*, 264 U.S. 543
(1924). This court should reject this "latitude" trope and acknowledge merely
temporary diffusion of legitimate public interest.[11] The alternative: re-establish the

---

[10] This most recent articulation should be enough to disprove the Supreme Court
having "curtailed" the "prohibitive force." The Supreme Court held: the Contracts
Clause was "given concrete force in three cases that followed closely in *Blaisdell*'s
wake" *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234 (1978).

[11] "If the legislature has the power, it has a wide latitude in determining the
need for its exercise and the extent thereof" *Farley v. Graney*, 146 W. Va. 22 (W.
Va. 1960). "The validity of such statutes may sometimes depend upon many
different facts, the existence of which would make a public use, even by an
individual, where, in the absence of such facts, the use would clearly be private."
*Clark v Nash*, 198 U.S. 361 (1905) (cited in *Block*). "It is the emergency that gives
the right, and the emergency must be shown to exist before the taking can be
justified." *Mitchell v. Harmony*, 54 U.S. 115 (1851). "the United States Supreme
Court *directly* and *purposely* overruled the contention that emergency conditions
could give validity, as against the contract clause of the Constitution, to a statute
which impaired contracts" *Travelers Insurance v. Marshall*, 124 Tex. 45 (1934).

"temporary expedient made necessary by a sudden emergency" *Korematsu v. United States*, 323 U.S. 214 (1944)- but this time with the Government stealing houses instead of forcing people into free ones.

*The "Obligation"*

The District commits further fraud by suggesting obligation may be "paused" constitutionally. Leases require "a sum of money on a certain day, the contract binds him to pay that sum on that day, and this is its obligation. Any law which releases a part of this obligation must, in the literal sense of the word, impair it." *Sturges v. Crowninshield*, 17 U.S. 122 (1819). See also *Welsh v. Cross*, 146 Cal. 621 (Cal. 1905) ("if the legislature can delay payment by limitation or exemption laws for six months they could do it for six years"); *Webster v. Rose*, 53 Tenn. 93 (1871) ("If the Legislature can enlarge the time one day in which the party, is to perform what the legal obligation of his contract requires at the time it is entered into, it may do it for a hundred days; and if for this period, then it may equally well do it for a hundred years"). *Blaisdell* did not authorize delay- it affirmed *timely* paying the *true value* of the land.

*Precedents*

The District claims history is distinguishable in finding impairment for only "*permanent*" statutes. False- and fraudulent as to *Story* and *Bott*. See again *Federal*

*Land Bank of Wichita v. Story*, 1988 OK 52 (Okla. 1988) ("The Act under review

is a mortgage foreclosure moratorium…The Act remained in effect from May 21,

1986, until May 21, 1987"); *Federal Land Bank v. Bott*, 732 P.2d 710 (Kan. 1987)

("The Act automatically expires July 1, 1991"). If a dozen more would help:

- *State ex Rel. Cleveringa v. Klein*, 63 N.D. 514 (N.D. 1933) (holding unconstitutional "An Act Temporarily Extending…")
- *State ex Rel. v. Waterfield*, 167 Okla. 209 (Okla. 1934) (holding unconstitutional "moratorium law")
- *First Trust Co. v. Smith*, 134 Neb. 84 (1938) (moratorium impairs contracts)
- *Travelers Insurance v. Marshall*, 124 Tex. 45 (1934) ("the 'Moratorium Law', violates the Constitution"… "The case of Bronson v. Kinzie, 1 How., 311, involved a moratory statute")
- *Hanauer v. Republic Building Co.*, 216 Wis. 49 (1934) (temporary moratorium Law "fails to meet two of the tests definitely prescribed as conditions to validity by the *Blaisdell* and *Worthen* Cases")
- *State v. Carew*, 13 Richardson L. & E. Rep., 498 (S.C. 1866) ("the Stay Law…is void"… "This Act was renewed in February and December, 1863 ; again in December, 1864; and in December, 1865…")
- *Taylor v. Stearns*, 59 Va. 244 (1868) ("the act of March 2, 1866, to stay the collection of debts for a limited period, is… unconstitutional.")
- *Burt v. Williams*, 24 Ark. 91 (1863) (emergency law "staying" debt suits until conclusion of Civil War impairs contracts)
- *Luter v. Hunter,* 30 Tex. 689 (1868) (same- rejecting "stay" law)
- *Jones v. McMahan*, 30 Tex. 719 (1868) (rejecting temporary statute permitting satisfaction of judgments via "installments" over 4 years)
- *Matter of People*, 264 N.Y. 69, 96 (N.Y. 1934) (affirming temporary statute because "There is no postponement here of the enforcement of the obligation")
- *Adams v. Spillyards*, 61 S.W.2d 686 (Ark. 1933) (holding statute resting on "a temporary emergency" to be unconstitutional)
- *Jones v. Crittenden*, 4 N.C. 385 (N.C. 1814) (rejecting temporary statute)

## IV.    There was No Compensation Made Available

*Blaisdell* required compensation. The District knows it. So they again trot out the lie which led to reconsideration below: "In the meantime, the District offered $350 million in funding to compensate landlords for lost rent through the Stay DC program... providing funds to compensate for losses" Dist. Brief, at 22.

## V.    Physical Taking/Appropriation

*"some master brain in the Inner Party would select this version or that, would re-edit it and set in motion the complex processes of cross-referencing..."*

Besides the 8th Circuit in *Heights*, the 10th Circuit found one in *Porter v. Shibe*, 158 F.2d 68 (10th Cir. 1946) (moratorium takes "the right of possession of the leased premises to which he would otherwise be entitled... For that deprivation, the Regulations provide for the payment of fair and equitable rent to the owner...fair and equitable rent is just compensation."). This court found a taking in *I.C.C.*, which the District ignores while making up non-existent laws: "Yee...paused the ability of landlords to..." Reality: ***false***. Let's see if the California Court of Appeals can land the takedown blow here:

*Opinion below*, at 10: "the reason that the tenancy had not been terminated in *Yee* was because the challenged law forbade it."

*Yee v. City of Escondido*, 224 Cal.App.3d 1349 (Cal. Ct. App. 1990) (f.11): "the California Mobilehome Residency Law does not require mobilehome park owners to 'refrain from terminating' mobilehome space leases."[12]

---

[12] The District sidesteps the cropping of *Yee* by the court below. See *Precision Specialty Metals, Inc. v. U.S.*, 315 F.3d 1346 (Fed. Cir. 2003) (affirming sanctions

*Encore, Encore, Encore![13]* [...the band walks back out].

*Opinion below*, at 10: "The Court in *Yee* paid no mind to the *present* status of the tenancy. What mattered was that the tenancy was *initially* voluntary. See *Yee*"

*Cwynar v. City and County of San Francisco*, 90 Cal.App.4th 637 (Cal. Ct. App. 2001) ("the *Yee* Court *did not* hold or intimate that government coercion is relevant only if it corresponds to the initial physical occupation of the premises")

The District lastly doubles down on one falsity below: "In *Yee*, the laws imposed permanent six- or twelve-month extensions on the notice period required for evictions." Dist. Brief, at 33. False. There was no "extension" of anything by any California law- there was simply the law as it had always existed, to which the lessor consented originally. For payment default in California, the notice period at the time of *Yee* was *three days* (unlike here or New York, where notice was not required). See *In re Windmill Farms, Inc.*, 841 F.2d 1467 (9th Cir. 1988) ("three-days' notice to pay rent or quit"). And it had been three days for a century and a half. See *Brummagim v. Spencer*, 29 Cal. 661 (Cal. 1866) ("the tenant then had three days further time in which to pay the rent, to save the forfeiture"). Tenancies in California end 3 days after default. In the District, as of 2019, they ended upon default.

---

for "cropping a quote"); *United States v. Stringfellow*, 911 F.2d 255 (9th Cir. 1990) ("distorted what the opinions stated by leaving out significant portions of the citations or cropping one of them").

[13] The District already *conceded* in *Block*: an eviction moratorium applies "beyond the technical termination" of tenancy. See below, at p.~~18~~. 23

*Tenancy vs. Trespass*

*"It's a beautiful thing, the destruction of words...it isn't only the synonyms, there are also the antonyms...In the end, the whole notion of goodness and badness will be covered by only six words- in reality, only one word..."*

"Gallo contends that Hopkins was 'a trespasser, not a tenant,' Br. 34, so the moratoria did not apply." ***False***. The SAC stated clearly: Hopkins was a *tenant* who *became a trespasser* by remaining after termination. SAC, f.4. I wrote the SAC this way- presenting the claim as *fact*- after watching district courts get tripped up on "invited" "tenants." An eviction moratorium precludes *eviction* of someone whose tenancy has terminated. Someone who has become a civil (and, in some other jurisdictions, criminal) trespasser.

The court below refused to admit this, which admittedly is trippy and took a while to learn. "His novel argument goes like this: A tenant who stops paying rent is no longer a tenant" *Order Granting Reconsideration*, at 6. I then made sure to put numerous authorities into the SAC, in Footnote 9.

See again, *Blaisell,* at 441: "the tenant defendants herein, by law older than the state of New York, became at the landlord's option trespassers on October 1, 1920...Feldman et al. may, if they like, remain in plaintiff's apartment, provided they make good month by month the allegation of their answer, i.e., pay what 'a court of competent jurisdiction' regards as fair and reasonable compensation for such enforced use and occupancy."

The owner's invitation- the *consent*- is over. See *Birkenfeld v. City of Berkeley*, 17 Cal.3d 129 (Cal. 1976) ("The purpose of the unlawful detainer statutes is procedural. The statutes implement the landlord's property rights by permitting him to recover possession once the consensual basis for the tenant's occupancy is at an end."); *Agar v. Winslow*, 123 Cal. 587 (1899) (upon default, "the action of ejectment is always based on the theory that the defendant is wrongfully in possession and a trespasser on the premises sought to be recovered.") The law of New York is the same: *Jackson ex dem. Livingston v. Bryan*, 1 Johns. 322 (1806) (Supreme Court of Judicature) ("if he is to be regarded as a tenant from year to year, notice was requisite, unless he has done some act amounting to a forfeiture"); *Hinsdale v. White*, 6 Hill & Den. 507 (N.Y. 1844) ("from the day of the forfeiture...The tenant may and should be considered a trespasser from that time"). A person sued for possession is alleged to no longer have a tenancy, but rather to be a former tenant who refused to get out after the grant of the house has *ended* and the owner's right to possess has *reverted*. A New Jersey appellate court described such a lessee: "plaintiff had been a trespasser since August 1,1995. That conclusion is not and cannot be disputed...The irony of the police department's trespass has not escaped us." *Borough of Fort Lee v. Banque National de Paris*, 311 N.J. Super. 280, 710 A.2d 1 (1998).

## VI.    Regulatory Taking
### a.  Economic Impact

The District inappropriately spins facts contrary to the complaint. The *permanent economic impact*, for me in the end, was $34,000. The money judgment against Hopkins is non-collectible, worthless, will not be "recovered," and therefore I have not "obtained damages" (Dist. Brief, at 39) and that's a fraud. Even if I did belatedly, that would merely *confirm* the merits violation as held by the Supreme Court in *Knick*. See also *Harrisonville v. W.S. Dickey Clay Mfg. Co.*, 289 U.S. 334 (1933) ("to oblige the landowner to bring repeated actions at law for loss of rental would be so onerous as to deny adequate relief").

### b.  Expectations

The District ignores my stated factual expectations and spins a ruse about how, on the Foreclosure Unit, my "expectation" could only begin upon formal acquisition of an interest. This is contrary to controlling precedent, thus a fraud, and was implicitly rejected below. See *Palazzolo v. Rhode Island*, 533 U.S. 606 (2001) ("Petitioner's acquisition of title after the regulations' effective date did not bar his takings claims"); *900 G Street Associates v. DHCD*, 430 A.2d 1387 (D.C. 1981) ("The mere sale of a property does not expunge the rights of the prior owner, which become vested in the new owner, to compensation for taking its

property.")[14] The quip about "robust protections for tenants" in earlier years leaves out that those "protections" never caused a penny in theft or one day of compelled defaulted occupancy- and are thus irrelevant.

### c. The Character of the Action
*"I noticed you had used two words which have become obsolete."*

The District spins a character contrary to the ruling below by arguing: "temporary changes to how some of those rights could be enforced." But the ruling below was not "changes" but "Rather, it simply deferred a specific remedy" *Second Opinion*, at 12. The character is: theft of occupancy by the state. The character is: "break the law or bleed to death." *Hegeman Farms Corp. v. Baldwin*, 293 U.S. 163 (1934). The character is: "injured by the denial of possession" *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555 (1935). The character is: trespass. The character is: treating me like society's bank. I could go on, but... *how about a magic trick*.[15] I'm gonna make this physical occupation disappear:

---

[14] See also *Hamilton Bank v. Williamson Cty. Reg. Planning*, 729 F.2d 402 (6th Cir. 1984) ("Hamilton and its predecessor in interest had a reasonable expectation that..."); *City of Lynchburg v. Mitchell*, 114 Va. 229 (1912) (a successor can claim under the takings clause); *Chicago Iowa R.R. Co. v. Hopkins*, 90 Ill. 316, 321 (1878) (affirming damages to a successor under the takings clause)

[15] https://www.youtube.com/watch?v=votcOf5cYCM

*First Opinion*: "The District's actions here legitimized a temporary physical occupation of the property..."

*Second Opinion*: "The regulation did not "legitimize[] a physical occupation of the property." Id."[16]

Speaking of things made to disappear in the court below, time for another encore

by the California Court of Appeals, this time on regulatory takings:

*Action Assn. v. Santa Monica Rent Control Bd.*, 94 Cal.App.4th 587 (Cal. Ct. App. 2001) ((1) economic impact: "During that period, each landlord, on average, will use $718 of its own funds to pay all of its tenants... Although the Board views those figures as de minimis, we do not. A small taking is still a taking." (2) expectation: "contrary to the landlords' reasonable investment-backed expectations" (3) character of the action: "treating private landlords like banks.")

## VII.  "Deferring a Remedy" & "Regulation"

*"The Revolution will be complete when the language is perfect."*

*Opinion below*, at 12: "The regulation...simply deferred a specific remedy (eviction) until after the public health emergency." *Opinion*, at 12.

*But see Muskin, Trustee v. State Dept. of Assess. Tax.*, 422 Md. 544 (Md. 2011): "...the extinguishment and transfer of the ground rent owner's reversionary interest in the property... can not be construed as simply a regulation."

and *State v. Goldberg*, 437 Md. 191 (Md. 2014): "Particularly, we disagree with labeling the right of reentry as a remedy that the Legislature may switch-out"

and *Dua v. Comcast Cable of Maryland, Inc.*, 370 Md. 604 (Md. 2002) (citing *Baugher, et al. v. Nelson*, 9 Gill 299, 309 (1850)): "[A]n act which divests a right

---

[16] *"The thing that impressed Winston in looking back was that the speaker had switched from one line to the other actually in midsentence, not only without a pause, but without even breaking the syntax."*

through the instrumentality of the remedy and under the pretense of regulating it, is as objectionable as if the shaft was leveled directly at the right itself"

These holdings are controlling[17]- and held that the right of reentry is a right of property- not a "remedy." "The right of re-entry is not a remedy, but is understood more properly as the right to pursue a provided remedy, such as ejectment...Under ejectment, the remedy for the right of reentry...the *right of present possession* is returned to the" owner. *Goldberg*, at 245 (emphasis added). The court below here took my claim that the Filing Ban took *present possession* and dismissed it by declaring possession is "not" taken while "remedy" is "deferred." And the rent? Re-entry is "inseparable from the vested rights of reversion and to collect rent." *Goldberg*, at 247. Under the Filing Ban, not only did present possession disappear, the *rent* did too replaced by permanent theft. "It is only in times of revolution that, by a stroke of the pen, vested rights founded upon contract have been annihilated." *Goldberg*, at 239.[18]

See also *Cienega Gardens v. U.S.*, 331 F.3d 1319 (Fed. Cir. 2003)("taking of a property interest, albeit temporarily, and not an example of government regulation...").

---

[17] See *De Vaughn v. Hutchinson*, 165 U.S. 566 (1897) (discussing how Maryland holdings on property rights post-dating the cession guide where "their reasoning is based upon the history of the law in Maryland ever since that State became independent"); DC Code § 45–401. Common Law.

[18] Maryland proceedings should not be confused with similarly named but rarely used "ejectment" actions in other states or here (supra, 3-4). The standard process in Maryland is "summary ejectment." Md. Code, Real. Prop. § 8-401.

## VIII. Misrepresenting *Block*

*"The past was brought up to date...All history was a palimpsest, scraped clean and reinscribed exactly as often as was necessary"*

The court below announced: "the specific kind of regulation at issue had occurred before...It had even occurred here in Washington. See Block" *Opinion below*, at 11. The District argues the court below "did not err" on *Block*, but a non-payment moratorium occurred here in 1919 as much as Comrade Ogilvy lived at 2320 S St NW. And who says he didn't? Once we touch up the Historic Register and wipe other inconvenient artifacts, "he would exist just as authentically, and upon the same evidence, as Charlemagne or Julius Caesar."[19]

The District already conceded to the Supreme Court in *Block*: "The only limitation is that the essential property itself shall not be taken away, and that is not done when the owner throughout the emergency period gets the fair and reasonable value of the use" and that the moratorium applies "beyond the technical termination..." *Block*, 256 U.S. 135, 152-153 (1921) (argument of District).

---

[19] For what "occurred" before here, see *Shipley v. American Security & Trust Co.*, 296 F. 1011 (D.C. 1924) ("Tenant subletting in violation of lease may be dispossessed, Ball Rent Act not applying... entitled to possession so long as he paid his rent and performed the other conditions of his agreement"), *National Metropolitan Bank of Washington v. Judge*, 37 A.2d 446 (1944) (affirming eviction proceeding where tenant "violated an obligation of her tenancy"), *Dunnington v. Thomas E. Jarrell Co.*, 96 A.2d 274 (1953) ("The tenant's possession is protected so long as he pays rent...")

### IX.    Burying the New York Precedents

*"it was a fragment of the abolished past, like a fossil bone which turns up in the wrong stratum and destroys a geological theory. It was enough to blow the Party to atoms, if in some way it could have been published to the world and its significance made known."*

Before trial courts:

- *Ullmann Realty Co. v. Tamur*, 113 Misc. 538,185 N.Y.S. 612 (1920) ("a taking by due process of law" & "the act affords him a means of recovery for 'a fair and reasonable rent for the premises.'…In the event of a tenant's failure to pay any rent at all he is given a prompt and efficient remedy" & "The owner receives adequate compensation for the use")
- *78th Street Broadway Co. v. Rosenbaum*, 182 N.Y.S. 505 (1920) ("Public use does not mean a direct use by the entire public… there might be exceptional times and places in which the very foundations of public welfare could not be laid without requiring concessions from individuals to each other upon due compensation")
- *Brandt Co., Inc., v. Weil*, 185 N.Y.S. 497 (1920) ("You cannot have your property back. The law will provide something else in its place, something just as good...")

On intermediate appeal:

- *People ex Rel. Rayland Realty Co., Inc. v. Fagan*, 194 A.D. 185 (N.Y. App. Div. 1920) ("The Legislature is not dealing with an invasion of tramps. It is not yielding to a new variation of the cry of 'bread and the circus.' It would assure the present homes to citizens who pay for their habitation." (emphasis added). (Blackmar, J, dissented, finding a private taking not implicating public interest: "carves out of the landlord's property an estate for years which it bestows on the tenant.")
- *Guttag v. Shatzkin*, 194 A.D. 509 (N.Y. App. Div. 1920) (contra: declaring moratorium an unconstitutional private taking "legalizing for any period the latter's possession thereof contrary to the express terms of the contract between the parties" despite just compensation being timely required)
- *Levy Leasing Co., Inc. v. Siegel*, 194 A.D. 482 (N.Y. App. Div. 1920) (no taking because statute only prohibits "the recovery of more than reasonable rentals")

And on final highest appeal:

- *People ex rel. Durham Realty Corp. v. La Fetra*, 230 N.Y. 429 (N.Y. 1921) ("…Unquestionably some taking of private property for the benefit of a class of individuals is the result of the housing laws…If property rights are here invaded, in a degree, *compensation therefor has been provided*") (emphasis added).
- *Guttag v. Shatzkin*, 230 N.Y. 647 (N.Y. 1921) (Crane, J, concurring) (emphasis added): "If 100,000 families were suddenly on the streets of the great metropolis without shelter, the state in the exercise of its reserve power could *compel* their housing at a reasonable rental to be paid by themselves or by the state. Private property could for the emergency be commandeered. The legislature by the laws in question has simply prevented such a catastrophe by requiring landlords *at reasonable rental* to keep tenants until normal building conditions have returned…the state legislature had the power to stay any and all proceedings for a reasonable time — that is while the danger or peril lasted, and until readjustment took place, the owner *receiving fair compensation meanwhile*."
- *Stern v. Equitable Trust Co.*, 238 N.Y. 267 (N.Y. 1924) ("the relation of landlord and tenant does not exist…. The tenant does not offer to remain in possession of the premises. He insists upon doing so. The landlord does not accept his proposition. The law *forces* it upon him.") (emphasis added)

A century later, welcome to the parallel universe:

"a landlord' decision to rent property is different than selling a commodity." *Williams v. Alameda Cnty.*, 642 F. Supp. 3d 1001 (N.D. Cal. 2022)

"The landlord is a purveyor of a commodity, the vendor of space…" *People ex rel. Durham Realty Corp. v. La Fetra*, 230 N.Y. 429, 443 (N.Y. 1921) ("Unquestionably some taking of private property")


*First Opinion below,* at 87: "The District's laws do not force Gallo to…"

*Second Opinion below*, at page 9: Gallo's tenant "not forced upon" him.

*Stern v. Equitable Trust Co.*, 238 N.Y. 267: "the law forces it upon him"

*Blaisdell*, 290 U.S. 441:    "compensation for such enforced use and occupancy"

### X.      The District Accidentally Confesses the Taking as to My Other Defaulted Lessees (Present Estates) and Expectant Estates

The court below proclaimed: the right to exclude is not implicated "at all" for any of my defaulted lessees because tenancy was "initially" consensual. The District now accidentally concedes the opposite by claiming: "Even if Hopkins had been a protected tenant…That sort of temporary restriction on the right to exclude…" Dist. Brief, at 35. Conceding a "temporary" taking of the right to exclude my defaulted lessees thus mandates reversal and joining the 8th and 10th Circuits. Takings Clause Claim I-a was a facial claim for the compelled occupancy of occupants *squatting in default*: "Plaintiff's reversionary interest in the Foreclosure Unit became present in May 2020, and his interest in other units became present upon the defaults by lessees" SAC, Takings Clause Claim I-a.

Nor did the SAC even limit the claim to instances where default occurred by a lessee. Multiple defaults occurred, but my expectant estates are also vested property. Thus, appropriations of vested estates occurred in all my properties, as the reversion need not occur for the estate to be taken. See *Dist. of Columbia v. Design Ctr. Owner (D.C.)*, 286 A.3d 1010 (D.C. 2022) ("Our statutes term such a property interest an 'estate in expectancy' and permit its sale or transfer 'in the same manner as estates in possession.' D.C. Code §§ 42-508,").

## XI.  Some Final Frauds

(1) that summary L&T proceedings may be "used to evict only those who qualify as tenants" Dist. Brief, at 3. This is false. Summary proceeding is used for *all* evictions in the District. Hence why one *was used* to evict Hopkins in 2022. L&T Complaint Form 1B includes boxes for "Defendant is not a tenant" and "Defendant is a foreclosed homeowner."

(2) That the DC Court of Appeals "made clear" in *Towers* that a moratorium is "not" a physical invasion. That is false. *Towers* did not address the subject.

(3) That several regulations implemented after the end of the Covid moratorium (eg, the $600 rule) were part of "expectations." Dist. Brief, at 2. Such laws cannot be retroactively bootstrapped back in time to form the basis of expectations in 2019.

(4) That the Court "could always order the parties to enter into a payment plan or take other steps to protect the tenant from eviction." Dist. Brief, at 23. **FALSE**. See *National Capital Housing Authority v. Douglas*, 333 A.2d 55 (1975) ("lacks power to stay even temporarily the execution of a writ of restitution"); *Conrad v. Medina*, 47 A.2d 562 (D.C. 1946) ("no power to order a stay").

## CONCLUSION

Since this case began in 2020, the 8th Circuit and 2nd Circuit have found impairments by Covid laws. The 8th Circuit found physical and regulatory takings. Louisiana's appellate court found a regulatory taking in *City Bar, Inc. v. Edwards*, 349 So. 3d 22 (La. Ct. App. 2022) (applying *Lingle*). Three judges on Virginia's Supreme Court stated in 2020: such a moratorium "sanctions a continuing trespass on the landlord's property," "constitutes a de facto temporary taking," and impairs a "contractual right- particularly while simultaneously requiring him to provide the breaching tenant with all of *that party's* rights (possession, noninterference with enjoyment, utilities, inter alia) under the lawfully terminated lease" *In re Amendment of Eighth Order Extending Declaration of Judicial Emergency in Response to COVID-19 Emergency*, 299 Va. 99 (Va. 2020).[20]

The People "voluntarily submitted to this self-restraint, and determined to protect their representatives in the State Legislature from the perils of temptation." *Travelers Insurance v. Marshall*, 124 Tex. 45, 76 S.W.2d 1007 (1934). Such thoughts were indeed on the DC Council Chairman's mind when he stated his feeling the statute here was unconstitutional, but moved it anyway based on

---

[20] The 8th and 10th Circuits (supra) are not alone in finding takings for eviction moratoria: See *Rivera v. R. Cobian Chinea Co.*, 181 F.2d 974 (1st Cir. 1950) ("violates the Fifth Amendment to the extent that it prohibits a landlord from prosecuting an action of unlawful detainer against a tenant…").

Appellee's confidential memo. See SAC #13. That memo was made constitutional

law by the rulings below. They must be reversed, because:

"Great as might be the sufferings growing out of a judicial sentence against this law… they are not, for one moment, to be compared with the evils likely to attend the demoralizing example of a judiciary seeking, however covertly, popular favor by some skillfully disguised compromise of its highest and most imperious duty-- that of disdaining every pretext, however plausible, and withstanding every temptation, however strong, to betray, in the slightest particular, the requirements of the State and Federal constitutions. Such a spectacle of weakness and subserviency upon the bench, if it did not shock, would incurably deprave public sentiment; destroy confidence in the administration of the laws; spread corruption through other branches of the public service, and fearfully depress the hopes of the friends of constitutional freedom. And it really seems to me that it would only be due to that gracious order of Providence, which overrules evil for good, if these pernicious effects should, indeed, stop here, and not descend to every walk of life and all orders of men, spreading abroad the contagion of dishonesty, weakening respect for law, corrupting the commerce and debauching the morals of society."
    – *Taylor v. Stearns*, 59 Va. 244 (Va. 1868) (unanimous)

Respectfully submitted,

*Alexander Gallo*

Alexander Gallo
950 25th St NW #329N
Washington, DC 20037
516-770-1624
aogallo@gwmail.gwu.edu

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I hereby certify that this Reply Brief

contains 6,494 words, excluding the parts exempted by Fed. R. App. P.

32(a)(7)(B)(iii) and Cir. R.32(a)(1). I further certify that this brief complies with

the typeface requirements of Fed. R. App. P. 32(a)(5) and the typeface style

requirements of Fed. R. App. P. 32(a)(6) because the brief was prepared in 14-

point Times New Roman font using Microsoft Word.

The addendum containing the 28(k) letter of the District of Columbia and the

Order of the Superior Court in *Gallo v. Hopkins*, being over 40 pages, is separately

bound.

Respectfully submitted,

*Alexander Gallo*

Alexander Gallo
950 25th St NW #329N
Washington, DC 20037
516-770-1624
aogallo@gwmail.gwu.edu

# CERTIFICATE OF SERVICE

I certify that on May 10, 2024, a copy of this Reply Brief is served by electronic mail on:

carl.schifferle@dc.gov

*Alexander Gallo*

Alexander Gallo