**No. 23-7158**

UNITED STATES COURT OF APPEALS FOR THE D.C. CIRCUIT

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

JAN 24 2025

RECEIVED

---

**ALEXANDER GALLO**
*Plaintiff-Appellant*

**v.**

**DISTRICT OF COLUMBIA**
*Defendant - Appellee*

---

**REPLY OF PLAINTIFF-APPELLANT**

**ALEXANDER GALLO**

---

On Appeal from the U.S. District Court for the District of Columbia

No. 21-CV-003298

(Trevor N. McFadden, District Judge)

Alexander Gallo
950 25th St NW #329N
Washington, DC 20037
516-770-1624
aogallo@gwmail.gwu.edu

## TABLE OF CONTENTS

I. Predicate Points and Repeated Frauds ....................4
a. Hopkins was a Tenant-at-Will. The District Denied His Ejectment along with All Commercial Lessees. ....................4
b. The SAC is not Limited to One Property ....................5
c. "Taking Steps"…That the District Made Illegal? ....................5
d. The Superior Court Could *Not* Delay Evictions ....................6
II. Contracts Clause ....................7
III. Takings Clause ....................11
a. Appropriation or Physical Taking ....................11
b. Regulatory Taking ....................14
CERTIFICATE OF COMPLIANCE ....................18
CERTIFICATE OF SERVICE ....................19

## ADDENDUM CONTAINING:

1. Order of Los Angeles Superior Court Holding Eviction Moratorium a Physical Taking

## STATUTES & REGULATIONS:

Applicable statutes, Mayors Orders, etc., are contained in the Brief for District of Columbia. The "Filing Ban" was a shifting collection of emergency and temporary amendments described in the Superior Court Order in 2020. Federal statutes such as the CARES act are not relevant to this case.

**Cases**

*Action Assn. v. Santa Monica Rent Control Bd.*, 94 Cal.App.4th 587 (Cal. Ct. App. 2001) ....................16
*Allied Structural Steel v. Spannaus*, 438 U.S. 234 (1978)....................8, 9
*Apartment Ass'n of L.A. Cnty., Inc. v. City of Los Angeles*, 500 F. Supp. 3d 1088 (C.D. Cal. 2020)....................10
*Apartment Association,* 10 F.4th 905 (9th Cir. 2021)....................9
*Benenson v. United States*, 548 F.2d 939 (Fed. Cir. 1977)....................15
*Conrad v. Medina*, 47 A.2d 562 (D.C. 1946)....................6
*Detroit v. Detroit Citizens' Street Railway Co.*, 184 U.S. 368 (1902)....................8, 10
*Dist. of Columbia v. Design Ctr. Owner*, 286 A.3d 1010 (D.C. 2022)....................14
*GHP Mgmt. Corp. v. City of L. A.*, CV 21-06311 DDP (JEMx) (C.D. Cal. Nov. 17, 2022)....................11
*Home Building & Loan Assn. v. Blaisdell*, 290 U.S. 398 (1934)....................8
*Iten v. Cnty. of L. A.*, 81 F.4th 979 (9th Cir. 2023)....................7
*Knick v. Township of Scott*, 139 S. Ct. 2162 (2019)....................15
*Levy Leasing Co., Inc. v. Siegel*, 258 U.S. 242 (1922)....................15
*National Capital Housing Authority v. Douglas*, 333 A.2d 55 (D.C. 1975)....................6
*Stern v. Equitable Trust*, 238 N.Y. 267 (N.Y. 1924)....................13
*Stop the Beach Renourishment, Inc. v. Florida Dept. of Environmental Protection*, 560 U.S. 702 (2010)....................4
*Twentieth Century Associates v. Waldman*, 294 N.Y. 571 (N.Y. 1945)....................9
*United States Trust Co. v. New Jersey*, 431 U.S. 1 (1977)....................8
*W. B. Worthen Co. v. Kavanaugh*, 295 U.S. 56 (1935)....................9
*Warthen v. Lamas*, 43 A.2d 759 (D.C. 1945)....................12
*Yee v. Escondido*, 503 U.S. 519 (1992)....................13

# REPLY

Pursuant to FRAP 28(c), Appellant submits this Reply Brief. The *Second Brief of Appellee* is a rehash of the first, and much was covered in the *Reply of Appellant* (filed 5/13/2024). This Reply focuses on re-raised points.

## I. Predicate Points and Repeated Frauds

### a. Hopkins was a Tenant-at-Will. The District Denied His Ejectment along with All Commercial Lessees.

The District comes here and proclaims: Hopkins was "not a tenant." But here's the District, before the DC Court of Appeals, calling him my tenant, and admitting any complaint for his eviction couldn't be filed until January 2022.[1] The Superior Court is The District, so Appellee's repeated efforts here to deny *its acts* is a fraud. "the particular state actor is irrelevant. If a legislature *or a court* declares that what was once an established right of private property no longer exists, it has taken that property, no less than if the State had physically appropriated it" *Stop the Beach Renourishment, Inc. v. Florida Dept. of Environmental Protection*, 560 U.S. 702 (2010) (emphasis original).

The Superior Court's application of the Filing Ban to Hopkins and its adjudication of the ejectment statute in the L&T branch, was not "overturned." It reflected state law. See *Appellant's Notice of Supplementary Authority*, 12/20/2024.

[1] https://www.youtube.com/watch?v=SCTYRByHcLI#t=55m40s

The eviction suits against him were *not* filed exclusively "under" 16-1501, as observed by the Superior Court. See again *Addendum* to *Reply of Appellant*, 5/13/24 (long ago put in the record here). The holding that the Filing Ban in totality violated access to the courts was overturned. Thereupon, Hopkins' 2020 eviction suit- which had been stayed for two years- was dismissed along with all eviction suits filed prior to October 2021, including all commercial lessees and foreclosed homeowners.

The "atextual" holding was a holding that the ejectment statute was covered by implication because the alternative was absurdity. Hopkins was sued in ejectment. Remedy of possession was denied. Judge Epstein never allowed *any* ejectment judgments to issue. He granted one TRO holding someone in contempt pursuant to a home sales contract. Hopkins never agreed to vacate, so that option was not available. Retroactive demonstrably false counter-factuals should not be polluting an appeal over a failure to state a claim.

**b. The SAC is not Limited to One Property**

Amicus was correct to observe the SAC is not "about Hopkins alone." *2nd Brief of Appellee*, at 1. It contains facial challenges and seeks declaratory relief, nominal damages, and mental anguish damages across the board.

**c. "Taking Steps"...That the District Made Illegal?**

Five years into this case, the District invents a new idea: there is no assertion that Appellant "took any steps to evict them..." prior to suffering the *Filing* Ban

which precluded their eviction. Like what? There were no "steps" to evict for nonpayment, so the argument is itself a fraud. In behavioral situations, the District made serving notices to correct illegal. Here's the Attorney General boasting of fining someone $17,000 for doing what they now argue here they should have done.[2]

As it regards nonpayment, the $600 rule was invented in 2022 to provide cover for Section 8 lessees. It is not retroactively bootstrapped into "expectations" as of 2019. The other referenced regulations are all irrelevant, as they do not implicate possession. There are no "hurdles" which preclude possession.

**d. The Superior Court Could *Not* Delay Evictions**

The District repeats the fraud that L&T "court could always order the parties to enter into a payment plan or take other steps to protect the tenant from eviction" at 28. This has never been permitted under state law. See *National Capital Housing Authority v. Douglas*, 333 A.2d 55 (D.C. 1975) (rejecting precisely that: "lacks power to stay even temporarily the execution of a writ of restitution"); *Conrad v. Medina*, 47 A.2d 562 (D.C. 1946) ("no power to order a stay"). The District was notified of these precedents in the prior *Reply of Appellant*.

[2] https://oag.dc.gov/release/ag-racine-announces-624k-court-judgement-against

## II. Contracts Clause

There are multiple impaired contracts (See SAC #14: "***all*** of Plaintiff's leases were thus made legally unenforceable"), including the implied contract with Hopkins. The 9th Circuit affirmed the standard for stating a claim in this context. See *Iten v. Cnty. of L. A.*, 81 F.4th 979 (9th Cir. 2023) ("Iten, at least for purposes of filing a complaint, has alleged that the obligations of his contract had been 'taken away or materially lessened.'…That is sufficient to state a claim under the Contracts Clause.") All of Appellant's leases *predate* the Filing Ban.

The court below joined one side of a circuit split in its second opinion. That holding is appealed and squarely presented. Amicus cannot "concede" anything (*Second Brief of Appellee*, at 17), yet the District gleefully waives that brief to neuter appellate holdings and proclaim: "Amicus agrees… acknowledges that no bona fide landlord would be able to state a Contracts Clause claim" *2nd Dist. Brief*, at 28.[3]

The District argues the Contracts Clause is a quasi-right which only permits suits against individuals in state courts. This is historical nonsense, as the Supreme

[3] See as to Covid laws, *Heights Apartments, LLC v. Walz*, 30 F.4th 720 (8th Cir. 2022) (violates Contracts Clause); *Melendez v. City of New York*, 16 F.4th 992 (2d Cir. 2021) (same); *Wash. Food Indus. Ass'n v. City of Seattle*, 524 P.3d 181 (Wash. 2023) (same); *In re Amendment of Eighth Order Extending Declaration of Judicial Emergency in Response to COVID-19 Emergency*, 299 Va. 99 (Va. 2020) (3-judge statement that the uncompensated eviction moratorium imposed by the State's supreme court violates Contracts Clause)

Court unanimously affirmed "an injunction to restrain the city of Detroit and the individual defendants from enforcing certain ordinances" under the Contracts Clause, filed via bill in equity in federal court. *Detroit v. Detroit Citizens' Street Railway Co.*, 184 U.S. 368 (1902). Also, *Allied Structural Steel v. Spannaus*, 438 U.S. 234 (1978) was a suit filed in federal court against an Attorney General for declaratory and injunctive relief. *United States Trust Co. v. New Jersey*, 431 U.S. 1 (1977) was a declaratory judgment action against a state filed in state court.

If the foregoing were all brain farts by a Supreme Court which forgot that it had cabined the Contracts Clause to individuals in state court, then a state can nullify the constitution by prohibiting suits against individuals in state court- as the Filing Ban did. Should this court nonetheless lob off USC 1983 as a cause of action, the SAC can be amended to rest under DC Code 1-203 and Plaintiff would still be entitled to judgment. On the merits, the obligation was indeed eliminated by the Filing Ban. See first *Reply Brief of Appellant*, page 13 ("*The 'Obligation'*").

*The Merits: A <u>Compensated</u> Moratorium is a <u>Reasonable</u> Moratorium*

The substantiality of the impairment is obvious. Wipe away the propaganda and the "reasonability" inquiry under *Blaisdell* is simple: "not left without compensation for the withholding of possession" *Home Building & Loan Assn. v. Blaisdell*, 290 U.S. 398 (1934) (Holding #5); "undisturbed possession for the debtor

and without a dollar for the creditor" *W. B. Worthen Co. v. Kavanaugh*, 295 U.S. 56 (1935); "that provision for the payment of reasonable compensation to a landlord who had not even consented to the lease was regarded as reasonable and appropriate to meet the demands of a situation..." *Twentieth Century Associates v. Waldman*, 294 N.Y. 571 (N.Y. 1945).

Covid moratoria were designed as total theft. The government didn't *forget* the money- it used the opportunity to launch an attempt to bury its shackles. The money judgment against Hopkins is non-collectible (SAC #37). A finding of a Contracts Clause violation in this context simply reaffirms the government must compensate and may be enjoined if it insists on not compensating.

*The 9th Circuit's Ruling in Apartment Association is Tainted by Fact Fraud*

The District (brief, at 29) ignores all the cases in Footnote 3 and asks this court to regurgitate *Apartment Association,* 10 F.4th 905 (9th Cir. 2021). That ruling was not a merits ruling[4] but merely a denial of preliminary injunction, so it's not appropriate to morph denial of injunction into failure to state a claim- especially in light of *Iten*. But even worse: *Apartment Association* is glaringly tainted by a fact

[4] The 9th Circuit's suggestion that the Contracts Clause's "prohibitive force" was "curtailed" in *Blaisdell* by the Supreme Court is pure propaganda which this Court must reject. The Court reaffirmed the Clause's "concrete force in three cases that followed closely in Blaisdell's wake" *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234 (1978).

fraud pitched by Los Angeles- the same one which led to reconsideration here. The city stated it would "pay all of the rental debt"- *belatedly*- (*Apartment Association*, at 916), so therefore its moratorium was somehow still "reasonable." That bastardizes *Blaisdell*, but even on its own terms, it was a lie. The city never compensated. The ruling supports Appellant here on the merits given the outcome.

How did we even wind up with fact fraud at the 9th Circuit? The case began before Judge Dean Pregerson in 2020. He was pitched the same lie on rent relief and declared it truth: "neither has the City Council simply thrown landlords to the wolves" 500 F. Supp. 3d 1088, 1099 (C.D. Cal. 2020). But yes, they did (see next Section). To muddy the waters further, Pregerson then *assumed* the payments he said existed didn't exist and still denied injunction because lessors had no way to prove they would be "unable to collect a monetary judgment against some unascertained third party at the conclusion of some unrelated, separate suit that has yet to, and may never, be filed in the first instance." *Apartment Ass'n of L.A. Cnty., Inc. v. City of Los Angeles*, 500 F. Supp. 3d 1088 (C.D. Cal. 2020). On appeal, the non-collectible arrearage language was discarded, replaced with non-existing relief payments.[5]

---

[5] The denial of injunction in the Los Angeles case conflicts with the Supreme Court affirming injunction under the Contracts Clause in *Detroit v. Detroit Citizens' Street Railway Co.*, 184 U.S. 368 (1902), on the ground the city's interference with gross receipts threatened "The ability of the complainant to renew or extend its mortgage indebtedness"

## III. Takings Clause

### a. Appropriation or Physical Taking

On April 15, 2022, the Los Angeles Superior Court held the county's eviction moratorium to be a physical taking: "Because tenants in arrears are effectively relieved of their obligations to pay rent, they are more like 'an interloper with a government license' than a lessee whose tenancy is regulated by the state... an eviction ban is not rent control... The right to bar a trespasser (i.e., a tenant refusing to pay rent) from possession of one's property is the most basic of real property rights" See *Addendum* to this Reply Brief.

Identical plaintiffs landed back in Pregerson's courtroom seeking compensation under the Takings Clause. *Oh boy*... what to do now? Admit the state court rightfully mandated compensation? Admit that the people he proclaimed in 2020 were not being robbed were, in fact all along, being totally robbed? No. A new dodge was needed: declare $20 Million is not "serious" economic impact, ignore that defaulted tenants are trespassers under state law, ignore the state court, and grant a motion to dismiss after sitting on the case for a year. *GHP Mgmt. Corp. v. City of L. A.*, CV 21-06311 DDP (JEMx) (C.D. Cal. Nov. 17, 2022). Daddy would be proud.[6]

---

[6] Roberts, Sam. *Harry Pregerson, Judge Guided by Conscience, Dies at 94*. The New York Times. November 29, 2017. ("Judge Pregerson freely defied legislative intent and judicial precedent if he believed he was right.")

*The District's Filing Ban was an Appropriation of Possession*

In 2022, the court below did exactly what Judge Pregerson did: ignore the stated facts on rent relief and ignore the claimed trespass. 610 F. Supp. 3d 73 (D.D.C. 2022). On reconsideration, it admitted there was no government compensation but still rejected the common law. "His novel argument goes like this: A tenant who stops paying rent is no longer a tenant..." 659 F. Supp. 3d 21 (D.D.C. 2023). I'm all for the glory here, but it's not my invention. See again *Blaisdell*, at 441: "tenant defendants herein, by law older than the state of New York, became at the landlord's option trespassers on October 1, 1920."

Under an eviction moratorium, tenants whose invitations have ended become tenants of the government which has inserted itself as sublessor to create a *new estate* for the tenant whose estate has ended. This was briefed extensively in this case yet continues to be ignored. See *Reply of Appellant*, filed 5/13/24 ("*Tenancy vs. Trespass*"). The District ignores state law articulated in *Warthen v. Lamas*, 43 A.2d 759 (D.C. 1945): a Filing Ban creates "a non-contractual statutory right of possession in the tenant, continuing at his option beyond the expiration of his lease or rental agreement. This is accomplished by depriving the landlord...of the right to maintain an action for possession." That is the *taking* of possession.

As the prior *Reply of Appellant* showed, and as both amici observe, lower courts have their heads willfully in the sand on *Yee*. Compare, for example:

> *Opinion below*, at 10: "The Court in *Yee* paid no mind to the *present* status of the tenancy. What mattered was that the tenancy was *initially* voluntary. See *Yee*"
>
> *Cwynar v. City and County of San Francisco*, 90 Cal.App.4th 637 (Cal. Ct. App. 2001) ("the *Yee* Court *did not* hold or intimate that government coercion is relevant only if it corresponds to the initial physical occupation of the premises")

The District ignores all of this and states it is merely "adding another limitation" (*Brief*, at 2) so therefore there is no taking of possession. Let's unpack this: possession is Swiss Cheese so another hole makes no difference. The fallacy should be obvious: there is no "limitation" on possession. You have it- or not- and there is no non-consensual "limitation" on possession under the permanent law.

The District's *permanent* law is similar to the statute affirmed in *Yee*. That is: when offering a lease, the lessor consensually enters a regime under which the rights of termination are set out in statute in advance and incorporated into the lease. It terminates upon default (forfeiture) by the lessee or termination for enumerated ground such as notice of owner move-in. Upon either event, the invitation ends. Compare an unterminated invitation under the permanent law with a terminated invitation under an eviction moratorium:

> *Yee v. Escondido*, 503 U.S. 519 (1992): "Petitioner's tenants were invited by petitioners, not forced upon them by the government"
>
> *Stern v. Equitable Trust*, 238 N.Y. 267 (N.Y. 1924) "The landlord does not accept…The law ***forces*** it upon him."

There can be no clearer revelation of the difference between a moratorium and *Yee*.

There are no "forfeited" claims. The SAC repeatedly references multiple properties. Multi-fold damages are sought. Furthermore, as the prior *Reply of Appellant* showed, an appropriation was consummated for *all properties* even without a default or breach because the moratorium took every expectant estate (all are property under District law[7]). The *right* to exclude anyone, from anywhere, under the permanent law (for example, moving in) was *taken*. Nominal damage will suffice. There is no failure to label which claims apply to which units. See SAC page 10 ("this section is a facial challenge"), page 16 ("this section applies to: the Foreclosure Unit" and "this section concerns impairment of Plaintiff's leases predating the Filing Ban"), page 18 ("this section applies to: all units"), etc.

**b. Regulatory Taking**

If Appellant's right to "make income from it through renting" was unaffected by the filing and eviction moratoria" (*Dist. Brief*, at 42), then why did rents received go to zero on multiple properties during the Moratorium? Why is there $34,000 less in the bank? The District asserts "At no point did the District take title" via a Moratorium. Dist. Brief, at 41. But as the Federal Circuit described a different District of Columbia moratorium: "we agree with plaintiffs that a taking of their entire fee interest has occurred" *Benenson v. United States*, 548 F.2d 939 (Fed. Cir.

[7] *Dist. of Columbia v. Design Ctr. Owner*, 286 A.3d 1010 (D.C. 2022) ("Our statutes term such a property interest an 'estate in expectancy' and permit its sale or transfer 'in the same manner as estates in possession.' D.C. Code §§ 42-508,")

1977). The SAC included a whole section listing precedents holding uncompensated moratoria to be regulatory takings and claimed a taking of the leased fee interest.

That "he has never contended that the moratoria interfered with his reasonable investment-backed expectations" (*Second Brief of Appellee*, at 21) is nonsense. The SAC p.12 states: "return is driven to negative infinity…the government doesn't reimburse." The regulatory taking claim was brought facially and as-applied. Nominal damages and mental anguish were sought for stolen rent and the imminent threat of even more. Numerous state supreme courts have held statutes to be facial regulatory takings. See SAC, page 14. The government does not get to keep its statute in this context.

Non-collectible debt is not compensation. See *Attorney General v. Old Colony Railroad*, 160 Mass. 62 (1893) ("the provision for adequate compensation certainly ought to be more than a mere right of action against a private person or corporation, with the risk of never obtaining satisfaction, and the compensation when it is made must be made in money.") Same for collectible debt: "A bank robber might give the loot back, but he still robbed the bank." *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019). A compensated moratorium is: money arrives *during* it, as a condition *of* it.[8]

[8] "The standard of the statute is as definite as the 'just compensation' standard adopted in the Fifth Amendment to the Constitution, and therefore ought to be sufficiently definite to satisfy the Constitution." *Levy Leasing Co., Inc. v. Siegel*, 258 U.S. 242 (1922) (eviction moratorium a compensated taking)

The District ignores the distinctly-plead errors on regulatory takings in the *Appellant Brief.* They are thus all conceded. See *Appellant Brief,* 23-30. This court should side with all the appellate courts noted in the SAC and join the California Court of Appeals in holding in precisely this context: is no economic impact floor of tens of thousands of dollars, there is no expectation of getting robbed, and the character of the action is treating landlords like banks:

> *Action Assn. v. Santa Monica Rent Control Bd.*, 94 Cal.App.4th 587 (Cal. Ct. App. 2001) ((1) economic impact: "During that period, each landlord, on average, will use $718 of its own funds to pay all of its tenants... Although the Board views those figures as de minimis, we do not. A small taking is still a taking." (2) expectation: "contrary to the landlords' reasonable investment-backed expectations" (3) character of the action: "treating private landlords like banks.")

Lastly, an assertion of "legitimate state interest" (put another way: "promoting the public good") does not negate a taking. It is the necessary *predicate* for a taking. The court below stated the moratorium "had 'a legitimate public purpose'" therefore it wasn't a taking. The Supreme Court later unanimously rejected the use of such language to negate a taking in *Lingle v. Chevron*, 544 U.S. 528 (2005). *District Intown* is thus partially abrogated.

## CONCLUSION

This case is simple: "Who pays for the orgy? Who causes the causeless? Who are the victims, condemned to remain unacknowledged and to perish in silence, lest their agony disturb your pretense that they do not exist?"[9] And why do some of our courts resemble 18th century France[10], where "Whoever owns and rents lodgings is an aristocrat, for others, his tenants, instead of receiving money, pay it out," government briefs are a "veritable master-piece of gibberish," and the bench is stacked with "despotic animals, who listen to nothing, who comprehend nothing, who do not even understand terms in common use, who stumble through their queries, and who, to ape intelligence, draggle their pens along in supreme stupidity." *The French Revolution*, 3 vols., trans. John Durand, (Indianapolis: Liberty Fund, 2002). Vol. 3 (Book VIII: *The Governed*).

Respectfully submitted,

*Alexander Gallo*

Alexander Gallo
950 25th St NW #329N
Washington, DC 20037
516-770-1624
aogallo@gwmail.gwu.edu

---

[9] https://www.cbsnews.com/sanfrancisco/video/east-bay-landlord-ends-hunger-strike-after-county-lets-eviction-moratorium-expire/

[10] https://news.gallup.com/poll/653897/americans-pass-judgment-courts.aspx

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(a)(7)(C), I hereby certify that this Reply Brief contains 3,350 words, excluding the parts exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Cir. R.32(a)(1). I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typeface style requirements of Fed. R. App. P. 32(a)(6) because the brief was prepared in 14-point Times New Roman font using Microsoft Word.

The addendum containing the ruling of the Superior Court of Los Angeles holding its moratorium to be a physical taking is separately bound.

Respectfully submitted,

/s/ Alexander Gallo

Alexander Gallo
950 25th St NW #329N
Washington, DC 20037
516-770-1624
aogallo@gwmail.gwu.edu

## CERTIFICATE OF SERVICE

I certify that on January 24, 2025, a copy of this Reply Brief is served by electronic mail on:

Jeremy.Girton@dc.gov

william.seidleck@lw.com

Alexander Gallo

Alexander Gallo